# IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
# CENTRAL DIVISION

| | |
|---|---|
| ASSOCIATED ELECTRIC & GAS INSURANCE SERVICES LIMITED,<br><br>Plaintiff,<br><br>v.<br><br>AMERICAN INTERNATIONAL GROUP, INC. and NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.,<br><br>Defendants. | **MEMORANDUM DECISION AND ORDER**<br><br><br>Case No. 2:11-cv-00368-RJS<br><br>Judge Robert J. Shelby |

This insurance dispute arises out of the tragic events in 2007 at the Crandall Canyon Mine. Plaintiff Associated Electric & Gas Insurance Services (AEGIS) seeks reimbursement from Defendant National Union Fire Insurance Company for settlement payments made in three underlying lawsuits. The parties previously filed cross-motions for summary judgment. The court resolved those motions in a Memorandum Decision and Order issued on February 20, 2015.[1] As relevant here, the court concluded that AEGIS may seek pro rata reimbursement from National Union for payments AEGIS made to settle the three underlying lawsuits on behalf of Andalex Resources, Inc., a common insured, including any payments Andalex made on behalf of its operating agent, Genwal Resources, Inc.

AEGIS now moves for summary judgment, seeking equitable contribution from National Union, plus prejudgment interest. National Union cross-moves for partial summary judgment on

---

[1] Dkt. 110.

1

the prejudgment interest issue. For the reasons stated below, the court grants AEGIS's Motion, and denies National's Union's Motion.

## BACKGROUND[2]

The Crandall Canyon Mine was a coal mine in Emery County, Utah. Intermountain Power Agency, Inc. (IPA) and Andalex Resources, Inc. each owned a fifty-percent share in the mine.[3] IPA designated Los Angeles Department of Water and Power (LADWP) as its operating agent with primary responsibility for its interest. Andalex designated its subsidiary, Genwal Resources, Inc., as its operating agent. Andalex is a subsidiary of UtahAmerican Energy, which is a subsidiary of Murray Energy Corporation.

IPA, Andalex, and Genwal entered into an insured contract in which IPA and Andalex agreed to indemnify Genwal for any damages, claims, or actions relating to the mine caused by Genwal's negligence. But the three parties agreed that IPA and Andalex would not indemnify Genwal for any damages, claims, or actions caused by Genwal's gross negligence or willful misconduct. And they agreed that IPA's and Andalex's indemnification obligations would not relieve any insurer that issued a policy covering the mine from honoring its obligation to pay insurance proceeds pursuant to the terms and conditions of the insurer's policy.

On August 6, 2007, the mine collapsed, trapping six miners underground. Rescue efforts ensued, but another collapse occurred on August 16, 2007, leading to the death of the six miners and three rescue workers. At least six other rescue workers were also injured.

---

[2] Even though the court is evaluating cross-motions for summary judgment, the court treats the cross-motions as if they are two distinct, independent motions. *Cannon v. State Farm Mut. Auto. Ins. Co.*, 2013 WL 5563303, at *1 (D. Utah Oct. 7, 2013). Accordingly, the court views the evidence and draws all reasonable inferences in the light most favorable to the nonmoving party in each motion. *Lounds v. Lincare, Inc.*, 812 F.3d 1208, 1220 (10th Cir. 2015).
[3] IPA and Andalex entered into an Amended and Restated Joint Ownership and Operating Agreement, in which IPA and Andalex agreed to share all losses, costs, damages, and expenses related to defending or settling tort claims, except to the extent that any of those losses, costs, damages, or expenses are discharged by an insurance policy covering the mine.

The injured rescue workers and the families of the deceased individuals initiated three lawsuits in Utah state court against Murray Energy, UtahAmerican, Andalex, IPA, LADWP, and a mine engineering firm. Genwal was named as a defendant with respect to some claims. The claims were generally based on negligence and wrongful death.

All three lawsuits were resolved in May 2009 as part of a global settlement agreement. [Redacted] percent of the total settlement amount was allocated for damages suffered by the plaintiffs as a result of the first collapse on August 6, 2007, while the remaining [redacted] percent was for damages suffered by the plaintiffs as a result of the second collapse on August 16, 2007.[4]

---

[4] Decl. of Edward Havas (Dkt. 138, Ex. F), ¶ 4. Edward Havas, counsel for a majority of the plaintiffs in the three underlying lawsuits, participated in the negotiation of the global settlement and is familiar with the settlement's payment structure. *Id.* ¶¶ 3–4. He testified that he has personal knowledge of the facts contained in his declaration, and that the settlement agreement required defendants to pay a lump sum payment that was then split among the plaintiffs and their counsel. *Id.* ¶¶ 1, 4. He also testified that he arrived at the allocation amounts after "review[ing] the records setting forth the amount paid to the Plaintiffs and their counsel." *Id.* ¶ 4.

Although National Union presents no competing evidence concerning the allocation amounts, it objects to Havas's declaration and contends that AEGIS has not met its burden under Federal Rule of Civil Procedure 56(c) to undisputedly establish the allocation amounts. *See Murray v. City of Tahlequah*, 312 F.3d 1196, 1200 (10th Cir. 2002) (stating that "[i]f the evidence produced in support of [a] summary judgment motion does not meet [the moving party's burden of production under Rule 56(c)], summary judgment must be denied *even if no opposing evidentiary matter is presented*" (citation omitted) (internal quotation marks omitted)). National Union argues that Havas's testimony is inadmissible hearsay because AEGIS has not produced the actual agreement allocating the amounts paid in the settlement or any other documentary evidence establishing those allocation amounts. National Union also contends that Havas's declaration violates the so-called "best evidence rule" under Federal Rules of Evidence 1001–1004 and Rule 56(e). The court rejects both arguments, and concludes that Havas's declaration sufficiently establishes the allocation amounts.

Rule 56(c)(4) provides that a "declaration used to support or oppose a motion must [1] be made on personal knowledge, [2] set out facts that would be admissible in evidence, and [3] show that the affiant or declarant is competent to testify on the matters stated." Each requirement is satisfied here.

First, Havas's declaration testimony is based on his personal knowledge. As counsel for a majority of the plaintiffs in the three underlying lawsuits, he personally participated in the global settlement's negotiation and is familiar with its terms and conditions.

Second, Havas's declaration testimony concerning the allocation amounts is neither hearsay nor inadmissible under the best evidence rule. Hearsay is an out-of-court statement offered "to prove the truth of the matter asserted in the statement." Fed. R. Evid. 801(c). But a witness's testimony is not hearsay if he or she has personal knowledge of the fact asserted, opposed to merely having personal knowledge of an out-of-court statement offered to prove the fact asserted. *See United States v. Gutierrez de Lopez*, 761 F.3d 1123, 1132 (10th Cir. 2014) (stating that if a "witness merely has personal knowledge of an out-of-court statement offered to prove the fact asserted in that

Four insurance companies contributed to the global settlement, including National Union and AEGIS.[5] National Union's policy provided coverage of $23 million per "occurrence" and in the aggregate. National Union contributed [redacted]% of the settlement on behalf of Murray Energy and UtahAmerican. AEGIS's policy provided coverage of $35 million per occurrence, and is not subject to an aggregate limit. AEGIS contributed [redacted]% of the settlement—or $[redacted] million—on behalf of IPA, LADWP, and Andalex. Of that amount, AEGIS paid $[redacted] million to IPA to reimburse IPA for amounts it paid on behalf of itself and LADWP, and paid $[redacted] million to Andalex to reimburse Andalex for amounts it paid on behalf of itself and Genwal.[6] Settlement payments were made on October 19, 2009.

AEGIS brought this lawsuit against National Union in 2011, seeking reimbursement from

---

statement—but not the underlying fact—then his or her testimony must comply with the hearsay rule"); *see also United States v. Shobe*, 2015 WL 2354257, at *6 (N.D. Okla. May 15, 2015) ("A witness' [sic] testimony may constitute hearsay if the witness merely has knowledge of an out-of-court statement, rather than the personal knowledge of the facts underlying the statement."). And while the best evidence rule provides that "[a]n original writing, recording, or photograph is required in order to prove its content unless [the Federal Rules of Evidence] or a federal statute provides otherwise," Fed. R. Evid. 1002, testimony "based on knowledge gained independently of the written matter is admissible even though it may pertain to the same matter," *Allen v. W.H.O. Alfalfa Milling Co.*, 272 F.2d 98, 100 (10th Cir. 1959). Havas has personal, independent knowledge of the allocation amounts based on his personal participation in the settlement's negotiation. His declaration testimony is not a recitation of an out-of-court statement or of another writing, but is instead based on information he obtained during those negotiations.

Third, Havas, as a practicing attorney since 1981, is competent to testify on the allocation amounts. Havas's declaration testimony concerning the allocation amounts satisfies Rule 56(c)(4)'s requirements. Because National Union presents no competing evidence, Havas's declaration testimony undisputedly establishes that [redacted] percent of the settlement amount was for damages suffered by the plaintiffs as a result of the first collapse on August 6, 2007, and that [redacted] percent of the settlement amount was for damages suffered by the plaintiffs as a result of the second collapse on August 16, 2007. *See* Fed. R. Civ. P. 56(e)(2).

[5] The two other insurers were Federal Insurance Company and Lexington Insurance Company. Federal Insurance and Lexington each contributed [redacted]% of the settlement on behalf of Murray Energy, UtahAmerican, Andalex, Genwal, LADWP, and IPA.

[6] Even though it presents no evidence that AEGIS paid a different amount to Andalex, National Union insists that it is disputed whether AEGIS paid $[redacted] million to Andalex. But National Union itself asserted this as a statement of undisputed fact and invited the court to rely on that statement in its June 7, 2013 Motion for Summary Judgment, in which it stated that AEGIS paid "$[redacted] million [] on behalf of [Andalex] and [Genwal]." Dkt. 64 at 13, ¶ 30. And in support, National Union cited the declaration testimony of Patrick Fredette, its counsel of record in this case, who in turn cited AEGIS's response to National Union's first set of interrogatories. Decl. of Patrick Fredette (Dkt. 66), ¶ 10. In its sworn response to National Union's first set of interrogatories, AEGIS stated that it "reimbursed [Andalex] for its settlement payment in the amount of $[redacted] million." AEGIS's Response to National Union's First Set of Interrogatories (Dkt. 66, Ex. I), at 9. The undisputed evidence establishes that AEGIS paid $[redacted] million directly to Andalex to reimburse Andalex for amounts it paid on behalf of itself and Genwal.

National Union for settlement payments AEGIS made on behalf of IPA, LADWP, and Andalex. The parties eventually filed cross-motions for summary judgment, primarily concerning which entities are covered under National Union's policy, whether the National Union policy is excess to the AEGIS policy, and whether National Union must reimburse AEGIS the excess amount AEGIS contributed to the settlement. As relevant here, the court concluded in its February 20, 2015 Memorandum Decision and Order that National Union's policy does not cover Genwal due to an exclusion in National Union's policy; that Andalex was a common insured of AEGIS and National Union; that IPA and Andalex entered into an "insured contract" to pay for Genwal's liability relating to the mine; and that AEGIS may seek pro rata reimbursement from National Union according to their respective policy limits for settlement payments AEGIS made on behalf of Andalex, including any payments Andalex made on behalf of Genwal.[7]

The parties have now filed new cross-motions for summary judgment. AEGIS seeks $3,711,700.75 in equitable contribution from National Union, plus prejudgment interest. National Union moves the court to rule that AEGIS is not entitled to prejudgment interest, regardless of whether AEGIS is entitled to equitable contribution in the requested amount.

## ANALYSIS

The court's analysis proceeds in three parts. The court first provides the governing legal standard. The court then discusses AEGIS's request for $3,711,700.75 in equitable contribution, before finally addressing its request for prejudgment interest. As explained, the court concludes that AEGIS is entitled to the requested amount in equitable contribution, and that it is entitled to prejudgment interest at the U.S. Prime Rate.

**I. Legal Standard**

The court grants summary judgment when "the movant shows that there is no genuine

---

[7] *See generally* Dkt. 110.

dispute as to any material fact and the movant is entitled to judgment as a matter of law."[8] The court "view[s] the evidence and make[s] all reasonable inferences in the light most favorable to the nonmoving party."[9]

## II. Equitable Contribution

The court now turns to AEGIS's request for $3,711,700.75 in equitable contribution from National Union. The parties agree that Utah law controls the court's analysis of the issue. The doctrine of equitable contribution, which governs disputes "between co-insurers who are liable for a common obligation," allows "an insurer that has paid a claim to seek contribution directly from other insurers who are liable for the same loss."[10] The doctrine "prevents the inequitable result of forcing one insurer to bear more than its share of losses," and "encourag[es] insurers to make prompt payments to the insured, leaving disputes concerning coverage to be determined later."[11]

Here, the court has already concluded that AEGIS is entitled to pro rata reimbursement from National Union according to their respective policy limits for settlement payments AEGIS made on behalf of Andalex, including any payments Andalex made on Genwal's behalf. Of the $[redacted] million that AEGIS paid toward the settlement of the three underlying lawsuits, $[redacted] million was paid to Andalex to reimburse Andalex for the amount it paid on behalf of itself and Genwal. And the parties agree that there were two "occurrences" under National Union's policy, meaning that "any payment for the loss occasioned by the first 'occurrence' under the National Union policy would reduce the available limit under that policy for the

---

[8] Fed. R. Civ. P. 56(a).
[9] *N. Natural Gas Co. v. Nash Oil & Gas, Inc.*, 526 F.3d 626, 629 (10th Cir. 2008).
[10] *Workers Comp. Fund v. Utah Bus. Ins. Co.*, 296 P.3d 734, 739 (Utah 2013) (citations omitted) (internal quotation marks omitted).
[11] *Id.* (citation omitted) (internal quotation marks omitted).

6

second 'occurrence' by operation of the aggregate limit feature in the National Union policy."[12] Furthermore, [redacted] percent of the total amount AEGIS paid was for damages suffered by the plaintiffs as a result of the first occurrence on August 6, 2007, and [redacted] percent was for damages suffered by the plaintiffs as a result of the second occurrence on August 16, 2007.

According to these undisputed facts, AEGIS paid $[redacted] toward the settlement of the first occurrence, $[redacted] of which (or fifty percent) AEGIS paid to Andalex. Based on its $23 million per occurrence and in the aggregate policy limit, National Union is responsible for [redacted]% of the $[redacted] that AEGIS paid to Andalex for the first occurrence.[13] Accordingly, National Union must contribute $[redacted] for the first occurrence.

Also, AEGIS paid $[redacted] for the second occurrence, $[redacted] of which (or fifty percent) AEGIS paid to Andalex. According to its policy limit, National Union is responsible for [redacted]% of the $[redacted] that AEGIS paid to Andalex for the second occurrence.[14] As a result, National Union must contribute $[redacted] for the second occurrence, and a total of $3,711,700.75 for both occurrences.

National Union does not dispute these calculations. National Union instead insists that AEGIS has not met its burden to establish that it is entitled to equitable contribution under the court's prior instructions. National Union first argues that, of the $[redacted] million AEGIS paid, AEGIS has not shown what amounts it paid on behalf of Andalex's own liability, what amounts it paid on behalf of Genwal's general liability, and what amounts it paid on behalf of Andalex's contractual obligation to indemnify Genwal.

In making this argument, National Union mistakenly assumes that AEGIS paid some portion of the $[redacted] million to Genwal as a named insured under AEGIS's policy (a

---

[12] Dkt. 138 at 11 n.2 (quoting Dkt. 64 at 42).
[13] The [redacted]% figure is reached by [redacted].
[14] The [redacted]% figure is reached by [redacted].

7

portion for which National Union would not be required to provide contribution because National Union's policy does not cover Genwal for liability related to the mine). But the uncontroverted evidence demonstrates that AEGIS paid the entire $[redacted] million to Andalex, and that Andaled paid that entire amount to settle the underlying lawsuits. In other words, because AEGIS paid no portion of the $[redacted] million to Genwal as a named insured under AEGIS's policy, National Union's argument that AEGIS has not allocated the $[redacted] million it paid rests on a faulty premise.

Next, notwithstanding that it filed the insured contract giving rise to Andalex's obligation to indemnify Genwal as an exhibit to its Opposition brief to AEGIS's Motion, National Union contends that AEGIS's failure to present the insured contract with its Motion is fatal to its claim for equitable contribution. National Union maintains that AEGIS's failure prevents AEGIS from establishing that Andalex paid any portion of Genwal's liability pursuant to the insured contract. But if Andalex paid any amounts on Genwal's behalf, Andalex necessarily did so pursuant to the insured contract. And National Union presents no evidence to the contrary. It instead invites the court to speculate that Andalex paid some portion on Genwal's behalf under some other contract between them. This the court will not do.

National Union further argues that although Andalex agreed to indemnify Genwal for any damages, claims, or actions relating to the mine caused by Genwal's negligence—but not caused by Genwal's gross negligence—AEGIS has provided no evidence that Genwal was only negligent, and not grossly negligent. But to the extent Andalex paid any amounts to Genwal under the insured contract, Andalex necessarily paid only for Genwal's negligence. And more importantly, while National points to several unproven allegations that Genwal was grossly negligent in its capacity as Andalex's operating agent, National Union presents no evidence

creating a genuine dispute of material fact that Genwal actually was grossly negligent. National Union's argument appears to be a misguided attempt to flip the burden of proof on a coverage-exclusion and to force AEGIS to prove the negative: that Genwal was not grossly negligent. National Union might have made this argument had it participated in the settlement on Andalex's behalf. But the court declines to determine the respective faults of the involved entities at this late juncture, where National Union has refused to pay its share of the settlement according to its policy limits.[15]

AEGIS is entitled to $3,711,700.75 in equitable contribution from National Union.

### III. Prejudgment Interest

AEGIS also seeks prejudgment interest from the date settlement payments were made, October 19, 2009. Utah law governs whether AEGIS is entitled to prejudgment interest.[16]

Prejudgment interest is designed "to compensate a party for the depreciating value of the amount owed over time and . . . to deter parties from intentionally withholding an amount that is liquidated and owing."[17] A party may recover prejudgment interest where the damages are both complete and calculable.[18] Damages are complete where "the loss has been fixed as of a definite time."[19] And damages are calculable where they are "measurable by facts and figures," and "can be calculated with mathematical accuracy in accordance with well-established rules of damages."[20] For example, prejudgment interest is appropriate "where the amount due under a contract [is] ascertainable by calculation," "even if the method of calculating is uncertain, [] the

---

[15] *See MIC Prop. & Cas. Ins. v. Int'l Ins. Co.*, 990 F.2d 573, 577 (10th Cir. 1993) ("Having refused to participate in the NCAA's defense and to take part in the settlement, despite its duty to defend its insured against these claims, International may not seek to litigate the issue of the parties' negligence at this late juncture.").
[16] *See AE, Inc. v. Goodyear Tire & Rubber Co.*, 576 F.3d 1050, 1055 (10th Cir. 2009).
[17] *Encon Utah, LLC v. Fluor Ames Kraemer, LLC*, 210 P.3d 263, 275 (Utah 2009) (citation omitted) (internal quotation marks omitted).
[18] *See Goodyear*, 576 F.3d at 1055.
[19] *Encon*, 210 P.3d at 272 (citation omitted) (internal quotation marks omitted).
[20] *Id.* (citation omitted) (internal quotation marks omitted).

damage figures change," or the parties dispute the amount due.[21]

Prejudgment interest is inappropriate, however, where the amount of the loss cannot be calculated with mathematical accuracy.[22] Such losses "are those in which damage amounts are to be determined by the broad discretion" of the fact finder,[23] requiring the fact finder to "assess damages based on a mere description of the wrongs done or injuries inflicted."[24] That said, the damage figures need not be known at the time the damages accrued, nor do they need to remain static throughout litigation.[25] The focus is instead "on the measurability and calculability of the damages."[26] And "[t]he critical consideration . . . is the manner in which damages are proven."[27]

Here, AEGIS is entitled to prejudgment interest from the date settlement payments were made. First, the amount owing was complete and fixed as of October 19, 2009. National Union argues that the amount of the loss was not fixed because the parties previously disputed whether there were one or two occurrences under National Union's policy, and AEGIS has only recently conceded that there were two occurrences. Whether there were one or two occurrences affects how much National Union owes AEGIS in equitable contribution. But the Utah Supreme Court has recognized "that the parties dispute or reduce the amount of damages does not in and of itself mean that damages are incomplete or cannot be calculated with mathematical accuracy."[28] And "a single voluntary reduction in claimed damages . . . does not preclude those damages from being measurable or calculable."[29]

Second, the amount owing can be calculated with mathematical accuracy. As discussed,

---

[21] *Id.* at 273.
[22] *Id.* at 272.
[23] *USA Power, LLC v. PacifiCorp*, 372 P.3d 629, 666 (Utah 2016) (citation omitted) (internal quotation marks omitted).
[24] *Encon*, 210 P.3d at 273 (citation omitted) (internal quotation marks omitted).
[25] *Id.* at 272.
[26] *Id.*
[27] *Goodyear*, 576 F.3d at 1057.
[28] *Encon*, 210 P.3d at 273 (citation omitted) (internal quotation marks omitted).
[29] *Id.*

it is undisputed that AEGIS paid Andalex $[redacted] million for payments Andalex made on behalf of itself and Genwal. It is also undisputed that there were two "occurrences" under the National Union policy, meaning any payment for the loss occasioned by the first occurrence under that policy would reduce the available limit for the second occurrence due to the policy's aggregate limit feature. And it is further undisputed that [redacted] percent of the settlement was paid for damages suffered by the plaintiffs as a result of the first occurrence, while [redacted] percent was paid for damages suffered as a result of the second occurrence. Applying the pro-rata by policy limits approach mathematically demonstrates that National Union must contribute $[redacted] for the first occurrence and $[redacted] for the second occurrence, for a total of $3,711,700.75 in equitable contribution.

National Union argues that the amount of the loss cannot be calculated with mathematical accuracy. It cites the Utah Supreme Court's *Iron Head Construction, Inc. v. Gurney*[30] decision for the proposition that "amounts paid in settlement to resolve outstanding liabilities do not constitute 'damages' calculable to a 'mathematical certainty.'"[31]

In *Iron Head*, the parties settled the plaintiff's breach of contract, unjust enrichment, and quantum meruit claims during trial.[32] The parties reserved for the trial court's determination whether the plaintiff was entitled to an award of prejudgment interest on the settlement amount.[33] The Utah Supreme Court held that a prejudgment interest award was inappropriate because

> (1) the settlement involved no underlying finding of damages or liability against either party; (2) the amount stipulated to by the parties was not related to an amount that could be calculated to a mathematical certainty; and, (3) allowing an award of prejudgment interest based solely on a stipulated amount between the parties undermines the public policy of encouraging settlements.[34]

---

[30] 207 P.3d 1231 (Utah 2009).
[31] Dkt. 148 at 7.
[32] 207 P.3d at 1232.
[33] *Id.*
[34] *Id.* at 1233; *see also id.* (holding that prejudgment interest is unavailable in cases "where the settlement [of the underlying claims] does not rest on a finding or contain a stipulation of liability and damages against a party").

The court explained that while an award of prejudgment interest must be "based on an award of *damages*," the "lack of a finding of liability or entry of judgment" against defendants barred a prejudgment interest award "because any such award must necessarily rely on a judgment."[35]

This case is distinguishable. First, *Iron Head* dealt with a settlement agreement between the parties to that case concerning the claims underlying the litigation. But AEGIS and National Union have not settled the claims between them in this case. Nor were they parties to the agreement settling the claims in the underlying Crandall Canyon Mine litigation. Instead, that settlement agreement merely forms the basis for AEGIS's equitable contribution claims against National Union here. To be sure, the settlement agreement stemming from the mine collapse did not include a finding of damages or liability. Yet the court has here concluded that National Union is liable for its share according to its policy limits of the settlement payments that AEGIS made to Andalex—a share that is calculable with mathematical certainty. What is more, denying—opposed to awarding—AEGIS prejudgment interest here would incentive co-insurers to wrongfully refuse to pay a settlement until judicially ordered to do so, knowing that they have nothing to lose. This not only undermines the public policy of encouraging settlements, but also undermines prejudgment interest's goal of "deter[ring] parties from intentionally withholding an amount that is liquidated and owing."[36] Simply put, this is not a case where a plaintiff is seeking prejudgment interest on an agreement settling the claims between the parties that gave rise to the litigation.

National Union next insists that prejudgment interest is unavailable in cases involving equitable remedies. Indeed, "equitable claims typically do not support an award of prejudgment interest because in most equitable cases the damages are not readily calculable to a mathematical

---

[35] *Id.* at 1234.
[36] *Encon*, 210 P.3d at 275 (citation omitted) (internal quotation marks omitted).

certainty."[37] But "solely relying on the nature of the claim to determine whether prejudgment interest is allowed is misplaced."[38] The questions are whether the amount of the loss has been fixed as of a definite time, and whether the loss can be calculated with mathematical accuracy.[39] As already discussed, the amount of the loss here was fixed on October 19, 2009, and it is calculable with mathematical accuracy.

AEGIS is entitled to prejudgment interest from October 19, 2009, at the U.S. Prime Rate.[40]

## CONCLUSION

For the reasons stated above, the court GRANTS AEGIS's Motion for Summary Judgment (Dkt. 138), and DENIES National Union's Cross-Motion for Partial Summary Judgment (Dkt. 148).

AEGIS is entitled to $3,711,700.75 in equitable contribution from National Union, plus prejudgment interest at the U.S. Prime Rate.

The Clerk of Court is directed to close the case.

SO ORDERED this 19th day of August, 2016.

BY THE COURT:

_____
ROBERT J. SHELBY
United States District Judge

---

[37] *Kimball v. Kimball*, 217 P.3d 733, 750 (Utah Ct. App. 2009).
[38] *Id.* (citation omitted) (internal quotation marks omitted).
[39] *Id.*
[40] In view of the Utah Supreme Court's recent decision in *USA Power, LLC v. Pacificorp*, 372 P.3d 629 (Utah 2016), AEGIS and National Union agree that the U.S. Prime Rate provides the applicable prejudgment interest rate.